# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **Mike McCleese** <br> c/o Manley Burke, LPA <br> 225 W. Court Street <br> Cincinnati, OH 45202 <br><br> vs. <br><br> **Natorp's Inc.** <br> c/o Wm. K. Natorp <br> 8601 Snider Road <br> Mason, OH 45040 <br><br> **Craig Natorp** <br> 8601 Snider Road <br> Mason, OH 45040 <br><br>         **Defendants.** | Case No. _____ <br><br> Judge _____ <br><br> **COMPLAINT** <br><br><br> **JURY DEMAND ENDORSED HEREON** |

## COMPLAINT

Plaintiff Mike McCleese, by and through counsel, files this complaint and alleges as follows:

### NATURE OF ACTION AND RELIEF SOUGHT

1. This is a civil action seeking injunctive relief, disgorgement of profits, damages, attorney's fees and costs for copyright infringement under the Copyright Act, 17 U.S.C.A. §§ 101 et seq, and statutory damages, costs, and attorney's fees under the Digital Millennium Copyright Act.

2. Plaintiff is also seeking disgorgement of profits, damages, and costs for unfair

competition under the Lanham Act.

3. This case arises from the Defendants' improper copying of Plaintiff's photographs and numerous, unauthorized instances of reproduction, distribution, and public display of the photographs, as well as, Defendants' false and misleading advertisement of Plaintiff's landscape designs and installations as its own.

**PARTIES**

4. Plaintiff McCleese is a landscape designer who resides in Vermont and works primarily from his home in rural Vermont when creating his designs.

5. Plaintiff McCleese specializes in creating customized landscape designs for select clients.

6. Plaintiff is the creator and copyright owner of 24 photos used in multiple unauthorized instances on the Defendant's website located at www.Natorp.com (Natorp's Website). Natorp's website is accessible to citizens of the United States and, offers membership in Natorp's Plant Lover's Club and gift certificates to consumers across the nation.

7. Upon information and belief, Defendant, Natorp's, Inc., (Natorp's) is a corporation registered in the state of Ohio. Defendant operates a business and has a principal place of business at 8601 Snider Road, Mason, Ohio 45040.

8. Defendant owns and operates a nursery outlet that advertises its plants and custom landscape design services on the Natorp's Website which also offers an extensive online plant store that allows consumers to place orders for in store pickup.

9. The Natorp's Website also offers consumers: educational guides, gift certificates, discounts, and membership in Natorp's Plant Lover's Club.

10. Defendant Craig Natorp is Vice-President of Natorp's and, according to Natorp's website, Mr. Natorp leads the Natorp's landscape design team.

**JURISDICTION AND VENUE**

11. This Court has original and exclusive jurisdiction of this action under 28 U.S.C.A. §1338(a) because the action arises under the Copyright Act, 17 U.S.C.A. §§ 101 et seq., and the Court has supplemental jurisdiction under 28 U.S.C.A. § 1367.

12. Venue in this Court is proper under 28 U.S.C.A. § 1391 since Defendants or its agents are subject to personal jurisdiction in this jurisdiction based on the presence of Natorp's in the state of Ohio, Mr. Natorp's residency in Ohio, and the ongoing business activities of each Defendant in this district.

## BACKGROUND

13. In the early 1990's, Mike Mccleese discovered a dormant passion for gardens and plants that launched him into a period of intense formal and informal studies. Mike studied landscape horticulture at Cincinnati State College and attended workshops and seminars around the country including the Kew, Royal Botanical Gardens in the United Kingdom. Mike also completed design workshops with renowned British garden designer Robin Templar Williams, Julie Moir Messervy, author of "Outside the Not So Big House", and Mike Linn, founder of the Mike Linn Graphic Workshop.

14. Mike launched his business, A Guy and His Dog Landscaping, in 1996 and is a member of the Association of Professional Landscape Designers (APLD), and NOFA (Northeastern Organic Farmers Association – Organic Land Care Program). Mike is also accredited with NOFA as an Organic Land Care Professional.

15. In pursuit of excellence in his field, Mike has toured and studied gardens throughout the US, France, the United Kingdom, Cuba, Canada, Mexico, and the Caribbean. Mike is an award-winning designer and won the silver medal for his garden design at the 2008 Cincinnati Flower and Garden Show.

16. With over 22 years of experience and numerous years of diligent preparation, Plaintiff has cultivated a reputation for skill and artistry in landscape design and for securing the services of master craftsmen for his garden installations.

17. Unlike services that focus on high volume and repetitive designs plans, Plaintiff designs and installs custom gardens for select clients for the purpose of creating an outdoor sanctuary, a garden specifically planned and built to reflect the client's tastes and dreams.

18. Plaintiff's installations involving stonework in the Cincinnati area were unique due to the skills and mastery of Richard Tufnell, a master stonemason from the United Kingdom. Tufnell has built an international reputation as a master at dry laid stonemasonry and is a past vice president of the Dry Stone Walling Association of Great Britain. He has worked and taught the art of stonemasonry in India, Africa, France, England, Scotland, and the United states. In addition, Tufnell is a highly respected lecturer and has won multiple prestigious awards and competitions for his dry laid stonemasonry work. Some of Tufnell's international training programs have resulted in restoration and construction of structures required for the welfare of suffering communities. The impact of these programs was featured in BBC documentaries.

19. While working in Cincinnati, Plaintiff also utilized the services of Mark Anderson, a craftsman known for his expertise in hardscapes. Over the years, Plaintiff and Anderson created an impressive portfolio demonstrating the exceptional artistry and careful consideration that are hallmarks of their work.

20. Mark Anderson has built innovative hardscapes in the Cincinnati area for over 20 years. In April of 2000, Anderson founded and became president of Greystone Landscape Construction. Anderson studied landscape design and construction at Cincinnati State & Technical College and was awarded a degree in Landscape Horticulture in 1982. Anderson's skill with hardscapes was an outstanding component of Plaintiff's landscape designs and installations.

21. Plaintiff has designed gardens that showcase the artistry and exceptional talent of the master craftsmen he has utilized to serve discerning clients in the Cincinnati area since 1996.

22. As part of his labors, Plaintiff created a notable collection of photos that he had taken depicting the mastery of Plaintiff's team in landscape design. Plaintiff's photos capture the artistry of craftsmen prepared by years of study and devotion to their field. Amongst the collection of photos are examples that distinguish Plaintiff's landscape design services from others and serve as a building block for his goodwill and reputation in the marketplace.

23. Plaintiff's photos include depictions of original, artistic, sculptural designs that

include, by way of illustration: weir stones, unique hardscapes, fountains, and trellis work.

24. Upon information and belief, Defendant Natorp's was aware that Anderson possessed photos depicting Plaintiff's landscape design installations many of which featured work performed by Anderson and Tufnell. Natorp's asked Anderson if he would feature 2 or 3 photos depicting his prior work on his personal office wall. Anderson agreed and displayed 2 or 3 photos in his private office during his employment between November of 2009 and June of 2011.

25. While working at Natorp's, Anderson stored a copy of many photos created by Plaintiff to depict his and his team's landscape design services. The photo compilation taken by Plaintiff was owned solely by Plaintiff who retained all copyrights to the photos. Anderson was not a licensee of the photos and held no ownership interest in Plaintiff's photos.

26. Plaintiff retained all of his rights arising from the creation of his photos and did not grant any licenses, assignments, or transfers of copyright to Tufnell. Plaintiff did, however, authorize Tufnell to display some photos of the team's landscape work for non-commercial purposes in an educational PowerPoint presentation to highlight the history, construction, and art of stonemasonry from ancient times to present. Tufnell's presentation included verbal and written attribution acknowledging Plaintiff as the creator of the photos and as the creator of the landscape design projects. Tufnell respected Plaintiff's rights and only used the photos for the non-commercial, educational presentation as described.

27. Moreover, Plaintiff retained all of his rights arising from the creation of his photos and did not grant any licenses, assignments, or transfers of copyright to Anderson. Instead, Plaintiff authorized Anderson to store a copy of the photos for limited private use. The permission granted to Anderson was limited to showing the photos to Anderson's prospective clients in a private viewing. Anderson respected Plaintiff's rights and only used the photos in the approved manner.

28. Mindful of the restriction on the use of the photos, neither Anderson or Tufnell provided the photos to Natorp's nor authorized Natorp's or any other entity to use the photos. Neither Anderson or Tufnell possessed any lawful authority to grant Natorp's permission to use Plaintiff's photos. Despite Anderson and Tufnell's diligence, upon information and belief,

Natorp's unlawfully misappropriated the photos stored on Anderson's work computer at Natorp's.

29. On or about February 2010, Natorp's began unauthorized use of approximately 24 photos protected by copyright and created by Plaintiff (Exhibit A). Anderson was unaware of Natorp's unstinting use of Plaintiff's photos on a highly visible, commercial website.

30. Anderson was never told by Natorp's that it had made copies of the photos on Anderson's computer nor did Natorp's ask permission to use the photos for any purpose. The photos appearing on the Natorp's Website depict projects undertaken by Plaintiff prior to Anderson's employment period with Natorp's. Plaintiff identified 24 photos on Natorp's website as his own and identified the landscape projects depicted on the site as his own.

31. Natorp's was fully aware the photos it displayed on the Natorp's Website were not created by it and did not demonstrate work completed by Natorp's.

32. Upon information and belief, Natorp's was fully aware the photos depicted Plaintiff's work.

33. Upon information and belief, Natorp's did not undertake any investigation to discover the identity of the copyright holder of the photos. Natorp's failed to obtain proper clearance for use of the photos and failed to seek Plaintiff's authorization to use the photos to promote Natorp's goods and services.

34. After intentionally leaving out accurate attribution credits and copyright management information, Natorp's falsely identified the photos on its web pages with its own copyright notice, concealing its infringement, and falsely claimed the photos and the depicted designs and installations as its own. The photos of the landscape design services were further depicted in association with the Natorp's trademark.

35. In addition, Plaintiff's photo of the garden he designed and managed construction of on Manor Hill Drive is unlawfully displayed, reproduced, disseminated, and falsely attributed as Natorp's work on a home page portal directing consumers to examples of Natorp's work.

36. The photos depicting the Manor Hill Drive Garden represented one of

Plaintiff's finest works and has been infringed multiple times by Natorp's and social media networks and entities which were provided photos by Natorp's. The Manor Hill Drive Garden project was a very expensive undertaking which earned Plaintiff a lucrative payment, however, Natorp's has repeatedly, publicly, and willfully passed off this work and other works of Plaintiff as its own and has profited financially from representing Plaintiff's artistry as its own.

37. Defendant Natorp's submitted at least two of Plaintiff's photos depicting his design work to the magazine Houstrends' to advertise and promote its own design work. The magazine is published and distributed in print and online and depicts high end real estate and gardens. Natorp's submission of Plaintiff's photos as an advertisement of its own work resulted in Housetrends' widespread infringement of Plaintiff's work and its participation in Natorp's falsely advertising and falsely passing off Plaintiff's work as its own for its own financial gain.

38. Furthermore, Defendant Natorp's posted photos of Plaintiff's work on its Facebook page and made public statements falsely attributing the work to the Natorp's landscape design team. Depictions of several photos from Natorp's wholesale website also appear on Pinterest and appear to have been posted by Natorp's itself, Housetrends magazine, and users of Pinterest who saved the photos. All of the photos at Pinterest link back to the entire photo gallery of Plaintiff's work located at Natorp's website for wholesale customers which is located at nlsupply.com. Natorp's acts of infringement continue to this day despite Plaintiff's request that all such activity cease and desist. Each of these additional infringements and dissemination of false advertising was caused by Natorp's unlawful use of Plaintiff's work for its own financial gain.

39. One of the photos unlawfully used by Natorp's cause Plaintiff significant distress because it depicts a work and place that is sacred to Plaintiff. The photo depicts McCleese's own garden with a trellis that he designed as a wedding gift for his now deceased wife. McCleese was deeply saddened and distressed to see any of his work used by Natorp's to build a marketing presence, but seeing this photo used as a marketing tool for Natorp's caused McCleese profound grief.

40. Defendant continued its intentional, unauthorized use of Plaintiff's photos after Anderson's departure from the company without ever informing Anderson it unlawfully

7

reproduced, displayed, and distributed Plaintiff's photos. Anderson remained unaware of Natorp's use of the photos until approximately May 8, 2018 when infringed photos were first discovered by Plaintiff. Each of the photos depict landscape design projects completed by Plaintiff before Anderson was hired by Natorp's.

41. On May 8, 2018, Plaintiff was working on site in the Cincinnati area and looking for a few specialty plants, therefore, he decided to visit Natorp's Website. Plaintiff had never visited the website before and was shocked to find one of his photos displayed on its homepage. Worse still, the photo depicted one of Plaintiff's most beautiful, complex gardens, which was falsely represented to consumers as an example of Natorp's work.

42. Plaintiff went to Natorp's in person to demand it remove Plaintiff's photo from the homepage of Natorp's commercial website. Plaintiff also requested that Craig Natorp, Vice- President of Natorp's, call and explain why Natorp's was using Plaintiff's photos and representing the landscape design and installation work as its own.

43. Plaintiff never received a call or explanation from Craig Natorp regarding the infringing use of Plaintiff's photos and Natorp's conduct in representing the work as its own.

44. Unsettled by his findings, Plaintiff returned to the Natorp's Website for assurance that the photo of his work remained removed. Although the photo Plaintiff demanded removed was no longer present on Natorp's homepage, Plaintiff was highly distressed to find the photo and 23 of his other photos being used in approximately 50 places on Natorp's website. (Exhibit B) Overall, the photos represented a substantial percentage of the visual images used by Natorp's as examples of its own landscape design services in its highly visible, online marketing efforts.

45. After documenting each infringing use, Plaintiff investigated the history of the Natorp's website pages using an internet archive tool known as the Wayback Machine. The archive contained evidence demonstrating that Natorp's began using Plaintiff's photos in 2010 (Exhibit B). Each of the photos infringed by Natorp's remained on its retail website in various places, including its homepage, until approximately September 2018, when it finally removed the photos after Plaintiff confronted it.

46. Plaintiff also discovered that Natorp's expanded its infringing and deceptive use

8

of Plaintiff's photos by featuring the photos as examples of its own landscape work and intentionally passing off Plaintiff's design work as its own on the popular home improvement website HOUZZ.

47. Natorp's knew or should have known that it was not the creator of the photos and knew the landscape designs and installations depicted in the photos were not its own.

48. Natorp's has acquired landscape design customers, sold goods and services associated with landscape design, and otherwise enriched itself through the misuse of Plaintiff's photos.

49. Defendant Craig Natorp had the ability and the duty to prevent Natorp's infringing and unlawful conduct and has directly benefited financially from the unlawful use of Plaintiff's work.

50. Shortly before filing this complaint, Plaintiff discovered that the Defendants continue the infringement of Plaintiff's photos. Although Defendant Natorp's and Defendant Craig Natorp are fully aware of Plaintiffs rights to the photos and on notice of the infringement they have willfully, recklessly, and blatantly continued acts of infringement and false advertising with a disregard for Plaintiff's rights for their own financial gain. Violations of Plaintiffs copyrights and acts of false advertising continue to accrue each day.

51. Without explanation, Defendants have willfully continued the unlawful use of the photos at issue in this complaint and continued falsely representing the depicted landscape design work as that of Natorp's. These acts continue at nlsupply.com (via a link available on all the Pinterest photos), housetrends.com, Facebook, Pinterest, and usdigitalpartners.com as described in this complaint. This is despite the fact Defendant Natorp's and Craig Natorp were put on notice of Plaintiff's claims in 2018.

52. Plaintiff does not license his photos for any commercial purpose, does not sell copies of his photos, and his photos are unpublished. Some of the photos at issue were not even displayed on Plaintiff's own website due to strict privacy agreements with his clients. Plaintiff would never have permitted Natorp's to use the photos as advertising tools or as a substantial part of its online marketing strategy, had he been asked.

53. Plaintiff diligently attempted to resolve these issues with Defendant prior to filing this complaint in the District of Vermont where the complaint was dismissed for lack of personal jurisdiction on October 24, 2019. While preparing to file in the Southern District of Ohio, Plaintiff discovered Natorp's continued acts of infringement, false attribution, and false advertising.

## FIRST CAUSE OF ACTION

### Defendant Natorp's and Craig Natorp

(Copyright Infringement)

54. Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

55. Plaintiff is the sole owner of all rights, title, and interest to the copyright of the photos contained in the compilation entitled Mike McCleese landscape.

56. The photographs discussed above are wholly original with Plaintiff and are copyrightable subject matter under the laws of the United States.

57. Upon information and belief, Defendants infringed Plaintiff's copyright in violation of the Copyright Act, 17 U.S.C. A. § 101 et seq., by knowingly and willfully publishing at least 24 photographs multiple times on multiple websites and in advertisements without the consent or authorization of the Plaintiff.

58. As a result of the foregoing, Plaintiff seeks injunctive relief, costs, damages and profits gained by Defendants and attorney fees for violations of Plaintiff's copyrights occurring after the copyrights were registered.

## SECOND CAUSE OF ACTION

### Defendant Natorp's

(Violation of the Digital Millennium Copyright Act)

59. Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

60. Upon information and belief, Natorp's knowingly and willfully distributed false Copyright Management Information (CMI) in violation of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1201.

61. Natorp's false CMI included a copyright notice on the Natorp's Website pages where Plaintiff's photos appeared. Natorp's false CMI allowed it to conceal its infringement of Plaintiff's photos.

62. Natorp's used at least 24 of Plaintiff's photographs on the Natorp's Website in as many as 50 locations in association with false CMI information.

63. As a result, Plaintiff is seeking statutory damages, costs, and attorney's fees.

**THIRD CAUSE OF ACTION**

**Defendant Natorp's and Craig Natorp**

(False Advertising in Violation of the Lanham Act)

64. Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

65. Natorp's falsely advertises its design services by depicting Plaintiff's landscape designs and installations on its commercial website, social media accounts, and in advertisements in Housetrends magazine and has represented Plaintiff's works as its own in violation of 15 U.S.C § 1125 (a).

66. Natorp's false representations were used to solicit customers who seek the quality and nature of landscape design services provided by Plaintiff.

67. The examples of Plaintiff's service are of a quality and nature associated with Plaintiff rather than Natorp's.

68. Natorp's has falsely represented Plaintiff's services as its own in association with the Natorp's trademark.

69. Natorp's has been unjustly enriched at Plaintiff's expense.

70. As a result, Plaintiff has suffered harm and is seeking injunctive relief, damages, profits attributable to the infringement, and costs.

## FOURTH CAUSE OF ACTION

### Defendant Craig Natorp

(Vicarious Infringement)

71. Defendant Craig Natorp failed to exercise his ability to prevent the infringing conduct of Natorp's and the parties described in this complaint who infringed Plaintiff's works because of Natorp's actions in posting or supplying Plaintiff's photos.

72. Defendant Craig Natorp has benefited financial from Natorp's infringement and from Natorp's continuing willful infringement and the infringing conduct of other parties described in this complaint.

73. Defendant has been unjustly enriched at Plaintiff's expense.

74. As a result, Plaintiff has suffered harm and is seeking injunctive relief, damages, defendants' profits attributable to the infringement, attorney's fees for violations of Plaintiff's copyrights occurring after the copyrights were registered and costs.

## FIFTH CAUSE OF ACTION

### Defendants Natorp's and Craig Natorp

(Common Law Unfair Competition)

75. Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

76. Defendants knowingly and willing published public statements that falsely represented Natorp's had designed the artistic landscape design work created by Plaintiff.

77. Defendant's willing benefitted and were unjustly enriched by falsely attributing Plaintiff's design work to Natorp's.

78. As a result, Plaintiff is seeking injunctive relief, damages, profits attributable to the infringement, costs and attorney's fees.

## PRAYER FOR RELIEF

Plaintiff prays for judgement against the Defendant as follows:

1. For an injunction under 17 U. S. C. A. §502 to prevent and restrain infringement by ordering Defendants not to publish, display or distribute or in any way disseminate the copyrighted work of Plaintiff.

2. For an order requiring the removal of all digital material stored on Defendant's computer servers or stored on any third-party computer server at Defendant's direction or displayed or disseminated through any other digital channel or platform.

3. For actual damages according to proof.

4. For an accounting of profits and a disgorgement of profits attributable to the infringement, unfair competition, and false advertising, attorney's fees and costs

5. For statutory damages, costs, and attorney's fees under the Digital Millennium Copyright Act.

6. For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues so triable in this action as provided by Rule 38 of The Federal Rules of Procedure.

Respectfully submitted,

*/s/ Micah E. Kamrass*
Micah E. Kamrass
MANLEY BURKE, LPA
225 West Court St.
Cincinnati, OH 45202
MKamrass@ManleyBurke.com

OF COUNSEL:
Kathryn G. Kent (*pro hac vice*
application pending)
Lewis Kent LLP

60 Lake Street, Second Floor
Burlington, VT 05402
Phone: (802) 498-7167
Kathryn@lewiskentllp.com

*Counsel for Defendant Mike McCleese*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was filed using the Court's ECF system, which will provide notice of the filing to all counsel of record and other individuals registered to receive notice in this case.

/s/ Micah E. Kamrass