# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION – CINCINNATI

| | |
|---|---|
| MIKE McCLEESE, | Case No. 1:20-cv-118 |
| Plaintiff, | Judge Matthew W. McFarland |
| v. | |
| NATORP'S, INC., CRAIG NATORP, | |
| Defendants. | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (Doc. 7)

This case is before the Court on Defendants' Motion to Dismiss Certain of Plaintiff's Claims pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 7.) Plaintiff has filed a Memorandum in Opposition (Doc. 10) and Defendants have filed a Reply (Doc. 11) making this matter ripe for review.

## FACTS

Plaintiff Mike McCleese owns a Vermont-based landscape company specializing in the design and installation of custom gardens. Defendant Natorp's Inc. ("Natorp's") is an Ohio-based nursery outlet offering custom landscape design services. Defendant Craig Natorp is the Vice-President and shareholder of Natorp's, and leads the landscape design team.

Throughout his extensive landscaping career, McCleese collected various photographs of unique projects and gardens. But in February 2010, Natorp's began

1

using approximately 24 of McCleese's photos on its commercial website. The parties disagree precisely as to how Defendants came into possession of the photos and whether such use was authorized. Defendants contend that they received authorization from a now-former Natorp's employee who had previously worked with McCleese on some of his landscape designs. McCleese argues that only he could grant such authorization, which he never did.

In May 2018, McCleese visited Natorp's website and discovered one of his photos on the main homepage. Upon further investigation, he found an additional 23 photos of his posted on Natorp's website. They were listed under headings such as "Backyard Landscape Photos" or "Natural Stone Step Photos." (Doc. 7-6, Page ID 113.) Each webpage that contained one of McCleese's photos also contained Natorp's own trademark and copyright symbols at the top and bottom, respectively. Later that month, while on a work trip to Ohio, McCleese visited Natorp's headquarters and requested that the photos be removed. Natorp's complied and removed all of his photos from its website shortly thereafter. The photos, however, still remain online at various social media outlets including Natorp's private website, Facebook, and Pinterest.

McCleese thereafter registered a copyright for his photos on January 10, 2019. McCleese asserts that he "does not license his photos for any commercial purpose, does not sell copies of his photos, and his photos are unpublished." (Doc. 5, ¶ 52.)

After the parties failed to resolve the dispute, McCleese filed suit in the U.S. District Court of Vermont but his complaint was dismissed for lack of personal jurisdiction. So, in March 2020, he filed the present lawsuit that alleges five causes of

action: **Count I** for direct copyright infringement against both Natorp's and Craig Natorp; **Count II** for violation of the Digital Millennium Copyright Act against Natorp's; **Count III** for false advertising in violation of the Lanham Act against both Natorp's and Craig Natorp; **Count IV** for vicarious copyright infringement against Craig Natorp; and **Count V** for common law unfair competition against both Natorp's and Craig Natorp. Defendants now move to dismiss causes I, III, IV, and V against Craig Natorp and causes II, III, IV, and V against Natorp's.

## LEGAL STANDARD

When considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes them in the light most favorable to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). To survive, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Asking for plausible grounds simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence." *National Business Development Services, Inc. v. American Credit Educ. and Consulting Inc.*, 299 Fed.Appx. 509, 512 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

The Court does not accept as true any "conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). The plaintiff's complaint

3

instead "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007).

## ANALYSIS

**I. Copyright Infringement**

Defendants' motion to dismiss count I against Craig Natorp is denied. To succeed on a copyright infringement claim, a plaintiff must establish (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original. *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 627-8 (6th Cir. 2020) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). The purpose of the second prong is to examine "whether *any* copying occurred." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) (emphasis added).

The first prong is not contested here. As to the second prong, Defendants argue that McCleese fails to provide factual allegations that connect Craig Natorp's individual conduct to the alleged acts of infringement. Principally, Defendants highlight that the Complaint alleges Craig Natorp merely "authorized" infringement of the photos but does not allege that he actually engaged in infringement himself.

The Court disagrees. The Complaint does allege factual matter that, when taken as true, plausibly demonstrates that Craig Natorp was involved in some infringement activity. First, Craig Natorp is the company's Vice President and a shareholder in the family-owned corporation. It is plausible that, through these positions, Craig Natorp exercises some degree of authority over the day-to-day activity of the business. Second,

4

Craig Natorp leads the landscape design team. McCleese alleges that Defendants used his photos for advertisements to promote their landscape services. Craig Natorp's team would have been the ones to complete those services. The Complaint further alleges that Natorp's could not possibly believe that the photos represented its own design team's work. And if anyone at Natorp's would know what was and was not a product of its own landscape design team, it would be the landscape design team leader.

While Defendants are correct that most of the Complaint refers only to the company and not Craig Natorp individually, it is well established that a corporation is an entity that can only act through its agents. *Barge v. Jaber*, 831 F.Supp. 593, 601 (S.D. Ohio 1993). Craig Natorp's position in the company and management of the landscape design team leaves the Court with a "reasonable inference" that it is *plausible* he copied *some* constituent element of McCleese's original work. *Iqbal*, 556 U.S. at 678. The Complaint also raises a reasonable expectation that more information could be revealed upon discovery. *Twombly*, 550 U.S. at 555. Defendants concede that the Complaint alleges sufficient factual matter to state a plausible claim for copyright infringement against Natorp's, Inc. The Complaint achieves the same as to Craig Natorp.

## II. Vicarious Infringement

Defendant's Motion to Dismiss count IV against Craig Natorp is also denied. A party may be held vicariously liable for copyright infringement when (1) a defendant has the right and ability to supervise the infringing conduct; and (2) the defendant has an obvious and direct financial interest in the infringement. *Gordon v. Nextel Commc'ns & Mullen Advertising, Inc.*, 345 F.3d 922, 925 (6th Cir. 2003). Vicarious copyright liability

5

is an "outgrowth" of the common law doctrine of *respondeat superior*, which holds the employer liable for the acts of its agents. *Id.* That a defendant lacks knowledge of the infringing activity is irrelevant to the analysis. *Id.*

As to the first element, the Complaint states facially plausible facts that Craig Natorp had the "right and ability to supervise" the alleged infringing activity. Cases imposing vicarious liability typically do so upon individuals who exercise "day-to-day control" of the business. *See, e.g. Jobete Music Co., Inc. v. Johnson Commc'ns, Inc.*, 285 F.Supp.2d 1077, 1084 (S.D. Ohio 2003) (finding majority owner of radio station vicariously liable for infringement where his duties "include supervising the station staff . . . [through which] station employees" ultimately report to him); *King Records, Inc. v. Bennett*, 438 F.Supp.2d 812, 852 (M.D. Tenn. 2006) (finding an individual vicariously liable for a business's infringement when the individual defendant, "made all final decisions, and was ultimately responsible for anything that happened at [the business]").

In support of their motion to dismiss, Defendants cite to a Northern District of California decision holding that "bare allegations" that an individual was a corporate officer are insufficient to support the first element of a vicarious liability claim. *Nebula, LLC v. Chordiant Software, Inc.*, 2009 WL 750201 at *2 (N.D. Cal. Mar. 20, 2009). But the Complaint here alleges far more than just Craig Natorp's title as an officer of the corporation—namely that he is also a shareholder and directly oversees the landscape design team. More analogous to the case at bar is *Jobete Music* where this Court held that a defendant who was a corporate officer, shareholder, and supervisor of certain staff

6

was vicariously liable for copyright infringement committed by that staff. 285 F.Supp. 2d at 1084. It is plausible that as a team leader and Vice President, Craig Natorp had the right and ability to supervise both the landscape design team specifically and actions of the business generally.

As to the second element, the Complaint contains sufficient factual matter to plausibly allege Craig Natorp's "obvious and direct financial interest" in the infringing activity. *Gordon*, 345 F.3d at 925. Defendants are correct in highlighting the Complaint's threadbare allegations that Craig Natorp received a "direct financial benefit." But the Complaint alleges additional facts that raise Craig Natorp's obvious and direct financial interest above the plausibility mark. Principally, the Complaint states that Natorp's has acquired landscape design customers and sold goods and services associated with landscape design since using McCleese's photos. This allegation taken together with Craig Natorp's status as a shareholder, as leader of the design team, and as a corporate officer gives rise to a reasonable inference that an "obvious and direct financial interest" in the infringement is plausible. While the precise nature of Craig Natorp's financial interest is unknown, the Complaint also gives rise to the reasonable expectation that discovery will shed further light on this issue.

### III. False Advertising in Violation of the Lanham Act

Defendants' motion to dismiss count III against both Natorp's and Craig Natorp is granted. While both parties briefed arguments as to Copyright Act preemption and whether McCleese could sustain a *prima facie* Lanham Act claim, the Court limits its analysis to the issue of standing.

To have statutory standing under the Lanham Act, a plaintiff must demonstrate (1) that he is within the "zone of interest" protected by Section 1125(a); and (2) show "proximate causation" between the plaintiff's injury and the alleged violation of the statute. *Lexmark Int'l, Inc. v. Static Components, Inc.*, 572 U.S. 118, 129 (2014). While the zone of interests test is "not especially demanding," a plaintiff still must plead an injury to a commercial interest in sales or business reputation. *Id.* The plaintiff in *Lexmark* had standing because its commercial position and competitiveness in the marketplace had been injured. *Id.* at 137. Likewise, a plaintiff who alleges a loss of commercial investors or damaged business reputation falls within the specific "zone of interests" protected by the Lanham Act. *Charleston Laboratories, Inc. v. SIDIS Corporation*, 2017 WL 3725189 *4 (E.D. Ky Aug. 29, 2017).

McCleese contends that he has a commercial interest in his landscape design services. Beyond this conclusory statement, however, McCleese fails to plead any facts demonstrating an injury to a commercial or sales interest. Instead, the only injuries McCleese pleads are immaterial to the legal analysis. First, the Complaint alleges a conclusory accusation that McCleese has "suffered harm." (Doc. 5, ¶ 70.) But in a motion to dismiss, the Court need not consider threadbare recitation of legal elements supported by mere conclusory statements. *Iqbal*, 556 U.S. at 678. Second, McCleese alleges sadness, distress, and "profound grief" from Natorp's use of a particular landscape job. (Doc. 5, ¶39.) This injury is a mere psychological, emotional harm, one that the Lanham Act does not contemplate. 15 U.S.C. § 1114, 1117.

Unlike in *Charleston Laboratories*, the Complaint here fails to allege any injury to

8

McCleese's business reputation in the commercial marketplace or that McCleese lost any business or investors at all. *Charleston*, 2017 WL 3725189 at *4. Unlike in *Lexmark*, the Complaint here does not allege any facts as to how McCleese's position in the marketplace was harmed in any way. *Lexmark*, 572 U.S. at 137. In fact, the Complaint itself undermines McCleese's own argument. McCleese concedes that he "does not license his photos for any commercial purpose, does not sell copies of his photos, and his photos are unpublished." (Doc. 5, ¶ 52.) Further, instead of alleging any fact to suggest a commercial harm to McCleese, the Complaint is mired with accusations that the Defendants were "unjustly enriched." A plaintiff's standing under the Lanham Act hinges on a commercial injury to the plaintiff, not merely a benefit to the defendant. *See Lexmark*, 572 U.S. at 132.

In sum, the Complaint contains no factual allegations that McCleese suffered an injury to his commercial sales interest or business reputation. And, as a practical matter, McCleese himself is in the best position to realize and articulate the commercial injury that Natorp's false advertising supposedly inflicted. Thus, discovery is not likely to yield any additional information to this fact. Because the Complaint failed to allege any commercial injury, the Court must conclude McCleese is not within the Lanham Act's "zone of interests." Consequently, count III is dismissed.

**IV. Common Law Unfair Competition**

Defendants' motion to dismiss count V against both Natorp's and Craig Natorp is granted. Both Ohio and federal courts have recognized that the same Lanham Act analysis applies to claims under Ohio's statutory and common law of unfair

9

competition. *See Leventhal & Assocs., Inc. v. Thomson Cent. Ohio,* 128 Ohio App.3d 188, 714 N.E.2d 418, 423 (Ohio Ct.App.1998); *Barrios v. American Thermal Instruments, Inc.,* 712 F.Supp. 611, 613–14 (S.D. Ohio 1988). Further, both parties agree that the common law unfair competition claim stands or falls with the Lanham Act claim. Because the Lanham Act claim fails, so too does McCleese's state law claims—either by statute or common law.[1] Count V is dismissed.

**V. The Digital Millennium Copyright Act**

Defendant's motion to dismiss count II against Natorp's is granted. Section 1202(a) of the Digital Millennium Copyright Act ("DMCA") provides that "no person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement— (1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a). To properly plead a violation of § 1202(a), a plaintiff must allege that "(1) defendant knowingly provided false copyright information; and (2) that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *Krechmer v. Tantaros,* 747 Fed.Appx. 6, 9 (2nd Cir. 2018). "Copyright management information" ("CMI") includes the name of the copyright owner— including as set forth in the notice of copyright—and the name of the author. 17 U.S.C. § 1202(c)(2), (c)(3).[2]

---

[1] While the Complaint only alleges violation of Ohio's common law of unfair competition, Plaintiff's Response in Opposition entertains the possibility of amending the Complaint to include a statutory violation under the Ohio Deceptive Trade Practices Act (ODTPA). Because Plaintiff's Lanham Act claim fails, the prospective statutory ODTPA claim would fail for the same reasons as the common law claim.
[2] While the Complaint failed to reference whether the DMCA claim arose under Section 1201, 1202(a) or

The necessary element common to all DMCA claims is the defendant's falsification of CMI. Because the Court finds that McCleese has not pleaded facts sufficient to allege the existence of false CMI, the Court's analysis is limited to that scope. To establish the existence of CMI, McCleese directs the Court to Natorp's trademarked logo and standard copyright symbol located at the top and bottom, respectively, of Natorp's webpages. (Doc. 7-6 at Page ID 113-15.) McCleese argues that Natorp's created false CMI merely by displaying its trademark and copyright on the same webpage as McCleese's photos. As such, McCleese argues that this false CMI is "conveyed in connection" with his photos in such a way that anyone viewing the photos online would conclude they were owned by Natorp's.

The Court disagrees. Overwhelmingly, case law precedent demonstrates that even when the same or similar facts alleged are accepted as true and viewed in light most favorable to McCleese, there is not a plausible claim that false CMI exists. Where a defendant's "copyright notice was at the bottom of every page of the website in the generic website footer," copyrighted content on that webpage is not "conveyed" as false CMI. *GC2 Incorporated v. International Game Technology PLC*, 255 F.Supp.3d 812, 821 (N.D. Ill. 2017). The defendant's trademark or copyright that allegedly makes the CMI false must appear in the "body" or "area around" the infringed work. *Shell v. Lautenschlager*, 2017 WL 4919206 at *9 (N.D. Ohio Oct. 31, 2017). This interpretation "is

---

1202(b), McCleese has clarified that he intended a § 1202(a) violation. McCleese concedes that while discovery may reveal a violation of § 1202(b), he "does not make that argument at this time." Because the Complaint does not even allege the existence of any CMI contained in McCleese's original photos nor does it allege Natorp's altered or removed CMI, the § 1202(b) claim is irrelevant. The Court proceeds on the understanding that McCleese is solely alleging Natorp's violated § 1202(a).

11

consistent with the text of the statute, which requires the CMI to be 'conveyed' with the copyrighted work." *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.* (N.D. Ill. Feb. 8, 2012) (citing 17 U.S.C. § 1202(c)). "Such a rule prevents a 'gotcha' system where a picture has no CMI near it but the plaintiff relies on a general copyright notice buried elsewhere on the website." *Id.*

The Northern District of Illinois recently assessed an argument analogous to McCleese's. *Alan Ross Machinery Corporation v. Machinio Corporation*, 2019 WL 1317664 (N.D. Ill. Mar. 22, 2019). In *Alan Ross*, the plaintiff alleged a violation of the DMCA when plaintiff's photos and data were posted verbatim on defendant's website. *Id.* at *1. To support the existence of CMI that was then falsified, the plaintiff argued its copyright symbol at the bottom of its webpages sufficed to copyright every photo. *Id.* at *3. In rejecting that argument, the court persuasively reasoned that, at most, a generic copyright notice at the bottom of a webpage conveys the owner's intellectual property rights in the entire website, not a blanket copyright to all of the photos or data listed on any given webpage. *Id.* The same reasoning applies here. McCleese, the Complaint, and its attached Exhibits rely on nothing more than a copyright symbol and the standard Natorp's trademark that appear on every page of the website.[3] McCleese does not allege that Natorp's altered or removed any copyright symbol on his photos. McCleese

---

[3] In assessing a Rule 12(b)(6) motion, this Court relies on the complaint, exhibits attached to it, and documents that a defendant attaches to the motion to dismiss, if the plaintiff refers to those documents in his complaint and they are central to his claim. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). Plaintiff amended his complaint but did not include the exhibits attached to the original complaint. He does, however, refer to the exhibits. *See, e.g.,* Doc. 5 at ¶¶ 29, 44. And Defendants attach them to their motion to dismiss. Accordingly, the exhibits attached to the original complaint and the motion to dismiss are part of the pleadings.

does not allege that Natorp's superimposed its copyright symbol or trademark onto his photos. Thus, McCleese fails to plausibly allege the existence of false CMI.

But McCleese contends that his case presents a unique issue: is false CMI created when Natorp's copyright and trademark "appear on pages consisting almost entirely" of McCleese's photos? (Doc. 10 at 11.) Again, McCleese's own Complaint and attached Exhibits undermine such an assertion. McCleese's 24 copyrighted photos are found at Exhibit D to the motion to dismiss, and are the same photographs attached to the Original Complaint as Exhibit A. Exhibit D also includes images of Natorp's webpages that are titled, for example, "Stepper Photos," "Natural Stone Step Photos," or "Backyard Landscape Photos." (Doc. 7-6 at Page ID 113-15.) These are the same screenshots attached to the Original Complaint as Exhibit B.

While McCleese asserts those webpages contain "almost entirely" his copyrighted photos, a simple side-by-side comparison reveals they do not. As an example, one of Natorp's webpages contains 54 photos, another page has 41, yet another has 10. Assuming for the sake of argument that the webpage with 41 photos titled "Backyard Landscape Photos" included all 24 of McCleese's copyrighted photos (which it does not), it cannot be said that the webpage consist "almost entirely" of McCleese's photos. The closest McCleese's "almost entirely" claim comes to bearing true is on the webpage titled "Pergola and Trellis Photos." But of the ten photos on that webpage, at most, two are McCleese's copyrighted photos. By McCleese's own admission, when a business "places its copyright notice on a webpage depicting many images, but mistakenly includes a small, infringed image, it is unlikely that would be

13

sufficient to show that the infringer had falsified CMI." (Doc. 10 at 11.) The Court agrees.

The Complaint does not allege facts to support the plausible existence of false CMI. False CMI is a necessary element to sufficiently plead any DMCA claim and because the Complaint fails to do so, count II is dismissed.

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss. This case will proceed on Count I against both Natorp's and Craig Natorp for copyright infringement and Count III against Craig Natorp for vicarious infringement. Accordingly, the Court hereby **ORDERS** that:

1. Defendants' Motion to Dismiss Count I for copyright infringement is **DENIED**;

2. Defendants' Motion to Dismiss Count II for violation of the DMCA is **GRANTED**;

3. Defendants' Motion to Dismiss Count III for violation of the Lanham Act is **GRANTED**;

4. Defendants' Motion to Dismiss Count IV for vicarious infringement is **DENIED**; and

5. Defendants' Motion to Dismiss Count V for common law unfair competition is **GRANTED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *[signature: Matthew W. McFarland]*

JUDGE MATTHEW W. McFARLAND