**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MIKE MCCLEESE,

    *Plaintiff,*

v.

NATORP'S INC. AND CRAIG
NATORP,

    *Defendants.*

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 1:20-cv-118

Judge Jeffery P. Hopkins

---

## OPINION AND ORDER

---

Mike McCleese and Natorp's Inc. both designed and installed custom landscapes in the Cincinnati area for decades. When browsing Natorp's website, McCleese discovered 24 photographs of custom lawns that he alleges he designed. So he sued Natorp's Inc. and one of its employees (collectively, "Defendants") for copyright infringement. After discovery closed, McCleese moved to amend his complaint to add a new cause of action for false designation of origin, and Defendants moved for summary judgment on McCleese's copyright claims.

By the close of fact discovery, McCleese still had not produced copies of the photos covered by his copyright registration. Without those photographs, McCleese cannot demonstrate that he owned the contested images, Natorp's copied those images, or he was entitled to damages for infringement. Defendants have thus established there are no genuine disputes of fact and shown they are entitled to judgment as a matter of law. And since McCleese does not meet the standard for leave to amend after the scheduling deadline, his untimely motion to amend also fails.

For the reasons below, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 28) and **DISMISSES** Plaintiff's First Amended Complaint (Doc. 5) **WITH PREJUDICE**. The Court also **DENIES** Plaintiff's Motion for Leave to Amend (Doc. 19).

## I.    BACKGROUND

Mike McCleese ("Plaintiff" or "McCleese") is a landscape designer who creates and installs customized gardens for his clients. Am. Compl., Doc. 5, ¶ 4. Over his career, McCleese has collaborated with other landscapers to curate a set of award-winning gardens in the Cincinnati area. *Id.* ¶ 15. After finishing his custom landscapes, he routinely photographed the gardens to build a portfolio of work advertising his skills. *Id.* ¶¶ 21–22. As of 2022, McCleese had relocated from Ohio to Vermont and maintains no active clients or projects. McCleese Dep., Doc. 24, 61:8, 19–25.

Natorp's Inc. ("Natorp's") sells plants, gardening equipment, and other landscaping services to retail and wholesale customers in Ohio. Doc. 28-2, ¶¶ 4–7. As one of its landscaping services, Natorp's designs and installs custom gardens for customers in the Cincinnati area. *Id.* ¶¶ 1–8. Craig Natorp (hereinafter referred to as "Craig Natorp" to avoid confusion), a vice president at Natorp's, leads the team that installs these custom gardens. *Id.* ¶¶ 9–10. As part of his role, Craig Natorp oversees production managers, designs custom gardens, and tracks the team's seasonal budget. *Id.* ¶ 10. Natorp's markets its landscape-design team's services on its website and social-media platforms. *Id.* ¶ 7; *see also* Am. Compl., Doc. 5, ¶¶ 8, 38. Craig Natorp does not assist with the selection of those promotional or marketing materials. Doc. 28-2, ¶ 11.

In May 2018, McCleese discovered a photograph of one of his custom gardens on the homepage of Natorp's website. Am. Compl., Doc. 5, ¶ 41. After browsing the site, he found

that Natorp's had displayed another 23 photos of his custom gardens, labelling them as generic backyard or natural landscape photos. *Id.* ¶ 44. Later that month, McCleese visited Natorp's Ohio headquarters to request that Natorp's remove the photographs from its website. *Id.* ¶ 42. Natorp's complied but continued to use the images on Facebook, Pinterest, and other social-media pages. *Id.* ¶ 38.

In August 2018, McCleese sent a demand letter with a draft complaint to Natorp's. In response, Natorp's explained that it received authorization to use the photos from Mark Anderson, a landscape designer specializing in "hardscapes." Doc. 7-1, PageID 61, 66; Am. Compl., Doc. 5, ¶¶ 19–20. Anderson had collaborated with McCleese on custom gardens since about 2008 and was employed at Natorp's between approximately 2010 and 2011. Doc. 28-2, ¶ 15; Am. Compl., Doc. 5, ¶¶ 19–20, 24–25. McCleese responded that only he could grant Natorp's authorization to use the 24 photographs—and he had not done so. Doc. 10, PageID 136.

On January 10, 2019, McCleese registered a copyright for a group of 24 photographs of his custom gardens. *See* Kern Decl., Doc. 7-2, PageID 73; Kern Decl., Doc. 7-5, Ex. C, PageID 98 (displaying Copyright Registration VAu001345278). In the application, he asserted that he does not license, sell, or publish his photographs for commercial purposes. Am. Compl., Doc. 5, ¶ 52. The application does not include copies of the images themselves, *see* Doc. 28-7, Ex. E, PageID 1709, and McCleese admits that the hard copies of the photographs were destroyed in a house fire in 2011, *see* Doc. 28-8, Ex. F, PageID 1715.

When the parties failed to resolve their disagreement, McCleese filed suit against the WM. A. Natorp Company in the District of Vermont. Doc. 12, PageID 162. *See McCleese v.*

3

*WM. A. Natorp Co.,* No. 5:19-cv-34, 2019 WL 13396473, at *7 (D. Vt. Oct. 24, 2019) (granting the defendant's motion to dismiss for lack of personal jurisdiction).

After that complaint was dismissed on jurisdictional grounds, McCleese filed a five-count complaint against Defendants in the Southern District of Ohio in February 2020.[1] Compl., Doc. 1. He sued both Defendants for copyright infringement (Count 1), false advertising in violation of the Lanham Act (Count 3), and common-law unfair competition (Count 5). Am. Compl., Doc. 5, ¶¶ 54–58, 64–70, 75–78. He also sued Natorp's for violating the Digital Millennium Copyright Act (DMCA) (Count 2), *id.* ¶¶ 59–63, and Craig Natorp for vicarious copyright infringement (Count 4), *id.* ¶¶ 71–74. Defendants moved to dismiss all counts. Doc. 7, PageID 52.

The Court dismissed the DMCA, false-advertising, and unfair-competition claims. Doc. 12, PageID 174. But it allowed the claims for copyright infringement against both Defendants and for vicarious infringement against Craig Natorp to proceed. *Id.* The Court imposed a deadline to amend the pleadings by November 15, 2021, and scheduled the close of fact discovery for April 1, 2022. Doc. 17, PageID 205. In May 2022, after fact discovery concluded, McCleese moved to amend his complaint to add a new claim for false designation under the Lanham Act. Doc. 19, PageID 223. Defendants opposed his request. Doc. 22, PageID 300. A few months later, Defendants moved for summary judgment. Doc. 28, PageID 1065.

---

[1]  The undersigned received his commission on December 18, 2022. By order of the then-Chief Judge, this case was reassigned from the Hon. Matthew W. McFarland to the undersigned, on December 21, 2022. *See* Doc. 37, PageID 2039.

## II.  SUMMARY JUDGMENT

Natorp's and Craig Natorp moved for summary judgment on McCleese's remaining claims for copyright infringement and vicarious liability for copyright infringement under Fed. R. Civ. P. 56(a). Doc. 28, PageID 1065.

### A.  Legal Standards

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "'always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

The non-movant cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is *material* if its resolution affects the outcome of an action, and a dispute is *genuine* if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248. At bottom, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).

### B. Analysis

The Copyright Act provides an exclusive right for the copyright owner to reproduce, copy, perform, or display protected work. *See* 17 U.S.C. § 106(1)–(6). To bring a claim for copyright infringement, a plaintiff must prove two elements: (1) "ownership of a valid copyright," and (2) "copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *see also ATC Distrib. Grp., Inc. v. Whatever It Takes Transmission & Parts, Inc.*, 402 F.3d 700, 705 (6th Cir. 2005). In addition to these elements, the plaintiff must also demonstrate that he is entitled to damages. 17 U.S.C. § 504(b); *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 358 (6th Cir. 2007). To bring a claim for vicarious copyright liability, a plaintiff must establish not only the elements of copyright infringement but also that the defendant was responsible for and financially interested in the infringement. *Gordon v. Nextel Commc'ns*, 345 F.3d 922, 925 (6th Cir. 2003).

Natorp's has established that there is no genuine dispute of material fact for each element of McCleese's claim for copyright infringement. Since McCleese's claim for copyright infringement fails, his claim for vicarious copyright infringement against Craig Natorp necessarily does as well.

### i. Ownership.

A certificate of registration from the United States Copyright Office constitutes prima facie evidence of the valid ownership of a copyright. *See* 17 U.S.C. § 410(c); *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 499 n.5 (6th Cir. 2022). Once a plaintiff

makes that showing, the defendant may still contest the coverage or validity of the registration. *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 477 (6th Cir. 2015), *aff'd*, 580 U.S. 405 (2017). "[I]t is the burden of the party challenging the copyright to" rebut the plaintiff's presumption of ownership. *Hi-Tech Video Prods., Inc. v. Cap. Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995).

McCleese asserts that the contested photographs are covered by U.S. Copyright Registration VAu001345278. *See* Kern Decl., Doc. 7-5, Ex. C, PageID 98; Doc. 28-7, Ex. E, PageID 1709. The certificate confirms that McCleese registered a group of 24 photographs on January 10, 2019. *See* Doc. 28-7, Ex. E, PageID 1709. McCleese has thus made out a prima facia case for his ownership of the contested photographs.

But Natorp's has successfully rebutted that presumption. For starters, the Copyright Office permits applicants to copyright groups of photographs only if they upload a "sequentially numbered list of photographs containing the title and file name for each photograph included in the group." *See id.* at PageID 1710. The applicant's registration "extends only to photographs that are uploaded and appear within the photograph title list." *Id*. Though McCleese attempted to copyright a group of 24 images, he listed the titles of only 15 of them. *Id*. at PageID 1709 (listing eleven "Manor Hill" images, two "Mike McCleese Garden" images, and two "Reines" images). Based on the Copyright Office's guidance, McCleese's registration may extend only to those 15 listed titles. So McCleese cannot claim to have copyrighted all 24 contested images on Natorp's website.

The ambiguity in McCleese's registration creates another problem: Once Natorp's challenged McCleese's registration, McCleese had to advance evidence that his copyright registration extended to the contested images from Natorp's website. *Mantel v. Microsoft Corp.*,

No. 16-cv-5277, 2018 WL 1602863, at *3 (S.D.N.Y. Mar. 29, 2018) (granting summary judgment where photographer failed to prove contested images were covered by his copyright registration). He cannot do so by pointing to the copyright certificate because the registration does not show the images themselves. Kern Decl., Doc. 7-5, Ex. C, PageID 98; Doc. 28-7, Ex. E, PageID 1709. When fact discovery closed, McCleese still had not provided the Court with original copies of his work. *See* Doc. 28-8, Ex. F, PageID 1714. Instead, McCleese continued to rely on images of the photographs that he reproduced from Natorp's website. *Id.*; Doc. 28-2, ¶ 165; McCleese Dep., Doc. 24, 159:2–10. He therefore did not establish that his registration covered the contested images.

In his opposition to Natorp's motion for summary judgment, McCleese finally appended 26 photographs allegedly covered by his copyright registration. Doc. 32-3, PageID 1884–1926. But the Court cannot consider this untimely evidence. During fact discovery, Natorp's repeatedly requested copies of the photographs covered by the registration. *See* Doc. 28-8, Ex. F, PageID 1713–16. McCleese responded that the photographs "have been requested" from the Copyright Office—but did not produce them during discovery. *Id.* at PageID 1715. So considering McCleese's dispositive evidence now without giving Natorp's a chance to conduct further discovery would be highly prejudicial. *See Mantel*, 2018 WL 1602863 at *4 (refusing to consider photographs submitted after close of discovery). And reopening discovery—now several years after it closed—would force the parties to incur additional cost and delay that would magnify that prejudice. So the Court cannot accept McCleese's last-minute production of the photographs when considering whether he met his burden of proving ownership of the contested photographs.

### ii.    Copying.

To show that a defendant copied original elements of a protected work, a plaintiff must establish that (1) the copyrighted work and the allegedly copied work are "substantially similar," and (2) the defendant had access to the copyrighted work. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). Courts determine whether a copyrighted work is "substantially similar" to an alleged copy by identifying protected elements of the plaintiff's work and then comparing them to the allegedly infringed work to assess whether the work's intended audience would believe they are alike. *Kohus v. Mariol*, 328 F.3d 848, 855, 858 (6th Cir. 2003); *see also Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 302 F. Supp. 3d 933, 941 (N.D. Ohio 2018) ("To determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as substantially similar." (citation omitted)).

McCleese's failure to timely provide copies of his work to the Court prevents him from establishing that his photos were substantially similar to the ones on Natorp's website. To establish whether Natorp's copied McCleese's photographs, the Court must be able to compare protected elements of McCleese's photos to Natorp's to determine whether the images are "substantially similar." *See Kohus*, 328 F.3d at 855. But the Court cannot identify similarities between the allegedly infringed photographs and McCleese's registered photographs without examining images in evidence. *See id.*; *see also Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 101 (2d Cir. 2014). McCleese failed to produce copies of his original images during fact discovery for Natorp's or the Court to use for this comparison. *See* Doc.

9

28-8, Ex. F, PageID 1714 (identifying the images on Natorp's website as the only copies of McCleese's work in the record). Without timely copies of the photos, the Court has nothing to compare to the photos on Natorp's website. So there is no genuine dispute of material fact as to whether Natorp's photographs were "substantially similar" to those belonging to McCleese. *Kohus*, 328 F.3d at 855.

In response, McCleese argues that he does not need to prove the photos are substantially similar because there is direct evidence that Natorp's copied those photos. But McCleese has not provided any direct evidence of copying. Other entities—including Natorp's and Anderson—had the capacity to separately photograph McCleese's custom gardens. And, of course, two photos of the same lawns—even if taken by different individuals at different times—might look alike. McCleese himself explained that his custom gardens have been photographed "so many times" that he cannot differentiate his own photographs from those taken by others without examining the metadata. McCleese Dep., Doc. 24, 165:16–17. Anderson likewise testified that he could not always tell whether he or McCleese had taken each of the photos. Anderson Dep., Doc. 25, 49:23. Without additional evidence, McCleese has not established that Natorp's copied original elements of McCleese's photographs instead of taking its own pictures or relying on similar images taken by others. *Cf. Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 453 (S.D.N.Y. 2005) (finding that the originality of the photo's scene or subject was essential to establishing infringement).

Even if we assume McCleese took the photographs and Natorp's copied them, McCleese did not establish that Natorp's alleged use was unauthorized. Natorp's argues that Anderson permitted it to use the photographs to advertise Anderson's—and, by extension, Natorp's—work during Anderson's employment with Natorp's. Doc. 7-1, PageID 61, 66;

Am. Compl., Doc. 5, ¶ 24–25. McCleese responds that only he could authorize others to use images that he created and owned. Doc. 10, PageID 136. But Anderson was arguably a co-owner of photographs that were a "joint work." 17 U.S.C. § 101; *see Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718, 747 (S.D. Ohio 2021). McCleese and Anderson both took photos of their landscaping work. Anderson Dep., Doc. 25, 45:24–25; 47:11–20. McCleese and Anderson then viewed the photographs as "shared," allowing each other to use them in personal portfolios and websites. *Id.* at 47:11–49:11; McCleese Dep., Doc. 24, 116:19. McCleese even encouraged Anderson to use the photographs to market his services to "prospective clients," hoping that those clients would hire McCleese and Anderson as a team. McCleese Dep., Doc. 24, 116:19–22. McCleese never told Anderson that he could no longer use their shared materials to advertise his own work when he started working at Natorp's. *Compare* Anderson Dep., Doc. 25, 50:12–13, *with* McCleese Dep., Doc. 24, 117:5–124:14. Indeed, since McCleese lost many of his documents during a 2011 house fire, Doc. 28-8, Ex. F, PageID 1715, Anderson sent McCleese hard copies of the photos that McCleese now asserts belong exclusively to him in preparation for this lawsuit. McCleese Dep., Doc. 24, 76:10–78:21; Doc. 28-2, ¶ 24. The record thus arguably compels a reasonable trier of fact to conclude that Anderson was a co-owner of the photographs and authorized Natorp's to use them. At minimum, since McCleese has not proven that he created or solely owned the photographs, he cannot claim that Natorp's needed his authorization to use them.

### iii. Damages.

Even if McCleese established the elements of copyright infringement, there is no evidence that he is entitled to any damages. Under 17 U.S.C. § 504(b), a plaintiff owning an infringed work may recover (1) "the actual damages suffered by him or her as a result of the

11

infringement," and (2) "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b).[2] McCleese has not shown that he can recover either form of damages. *See ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 631 (6th Cir. 2020).

First, McCleese is not entitled to recover "actual damages suffered" from the alleged infringement. 17 U.S.C. § 504(b). This form of damages allows a plaintiff to recoup any profits he would have made but for the defendant's unlawful copying. *Thoroughbred Software*, 488 F.3d at 358. That, in turn, means the plaintiff "must prove the existence of a causal connection between the alleged infringement and some loss of anticipated revenue." *Id.* (citation modified).

But McCleese has not identified any revenue streams tied to the photographs. As he frankly concedes: "[I]t is often difficult in cases such as this to prove actual dollar figures related to losses." Doc. 32, PageID 1811. After all, McCleese "does not license his photos for any commercial purpose, does not sell copies of his photos, and his photos are unpublished." Am. Compl., Doc. 5, ¶ 52. Absent concrete losses, McCleese argues that the photographs confused customers, reduced his goodwill, and damaged his reputation. *Id.* Yet McCleese does not identify any customers who hired Natorp's instead of him based on the photos displayed on Natorp's website. Doc. 28-8, Ex. F, PageID 1716. Nor does he point to customers who expressed confusion about the difference between his services and Natorp's. So McCleese has not identified quantifiable losses to his own business, much less linked those losses to Natorp's alleged use of his photographs.

---

[2]  Under 17 U.S.C. § 504(c), a plaintiff may also elect to recover "an award of statutory damages for all infringements involved in the action" instead of "actual damages and profits." 17 U.S.C. § 504(c). McCleese does not seek statutory damages.

Instead, McCleese primarily argues that he is entitled to disgorgement of Natorp's "profits . . . that are attributable to the infringement." 17 U.S.C. § 504(b). To establish the infringer's profits, the copyright owner must first "present proof only of the infringer's gross revenue." *Id.* Once the plaintiff establishes gross revenue, the alleged infringer "is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.* In short, "the infringer must show what part of its gross revenues did not result from the infringement." *Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*, 93 F.4th 985, 994 (6th Cir. 2024). This two-step burden-shifting framework "corresponds to the reality that the infringer usually possesses the information necessary to provide the victim a fair share of the profits." *Id.*

At the outset, the plaintiff must prove "the infringer's gross revenue of the infringing product." *Balsley v. LFP, Inc.*, 691 F.3d 747, 767 (6th Cir. 2012). But the plaintiff need not prove what portion of this revenue was attributable to the infringement. *Id.* at 769 & n.6. Instead, the plaintiff's revenue figures typically "suffice if they correspond to the product containing the infringing work." *Premier Dealer Servs.*, 93 F.4th at 994. Nevertheless, "common-sense" still demands that "this gross revenue number must have a reasonable relationship—relevance, in other words—to the infringing activity." *Balsley*, 691 F.3d at 769. Summary judgment is thus proper when the plaintiff is "unable to present *any* nonspeculative gross revenue number" for the infringing product. *Id.* at 769 n.5; *see also id.* at 770 ("At the summary judgment stage, Plaintiff must introduce non-speculative evidence of this [reasonable] relationship, consistent with general damages principles." (quotation omitted)).

To identify "relevant" revenue, the plaintiff must typically point to revenues linked—though not causally connected—to the infringed product. In other cases, the Sixth Circuit

found that a plaintiff alleging a magazine infringed his photograph could rely on revenues from *that* magazine issue's sale, *id.* at 770–71; a plaintiff alleging a factory infringed his quality-control software could look to *that* factory's revenue, *ECIMOS*, 971 F.3d at 634; or a plaintiff alleging a software administrator infringed his certificate could identify revenue from the sale of the service containing *that* certificate, *Premier Dealer Servs.*, 93 F.4th at 996. But the Sixth Circuit did not permit these plaintiffs to establish disgorgement by simply pointing to the defendant's total revenue from multiple sources and product lines, only some of which were alleged to relate to the infringement. *Cf. Navarro*, 515 F. Supp. 3d at 763 ("Say, for example, the defendant company sells prints of photographs A and B, only the latter of which is an infringing image. The revenues at issue, then, would be those associated with sales of photograph B, not photograph A."). After all, if plaintiffs could meet their burden by vaguely gesturing at the defendant's annual revenue, it would render meaningless the requirement that revenue be reasonably related to the infringed product. In short, the plaintiff must produce something more specific than the defendant's total revenue for all product lines and distribution channels.

Yet that's all McCleese has here. During discovery, Natorp's produced gross revenue figures for 2017, projected revenues for 2018, and additional revenue figures from 2010 to 2022. Doc. 32, PageID 1814; Doc. 28-10, PageID 1736–48. In his opposition to summary judgment, McCleese seems to assert that Natorp's gross revenue from *all* its product lines and distribution channels reasonably relates to 24 photographs displayed on scattered pages of Natorp's website and posts on social media. Doc. 32, PageID 1812 ("Natorp's published and distributed copies of the infringed photos . . . all of which promoted the goods and services of its business[,] which includes selling plants and landscape design services."). But without

more, this evidence does not have a "common-sense" relationship to the alleged infringement that is sufficiently non-speculative to survive summary judgment. *Balsley*, 691 F.3d at 769. McCleese has not identified a product line—*e.g.*, custom landscaping—or a distribution channel—*e.g.*, online—that it can reasonably connect to Natorp's gross revenue from its total sales of plants, landscaping equipment, and services between 2010 and 2022. Though McCleese does not have to attribute a precise share of Natorp's revenue to the infringement at summary judgment, he must specify Natorp's revenue to the point where a factfinder could reasonably relate that figure to the alleged infringement.

Finally, Natorp's and McCleese advance a variety of arguments about the timeframe for recovery. The Copyright Act states that "[n]o civil action shall be maintained . . . unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Natorp's claims that this language means that a successful copyright plaintiff "can gain retrospective relief only three years back from the time of suit." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677 (2014); Doc. 28-1, PageID 1623–26. That reasoning would limit McCleese's recovery to damages incurred after February 13, 2017, three years before he filed his suit in this Court. Doc. 28-1, PageID 1626. McCleese, by contrast, urges the Court to "reject[] the notion that recoverable damages are limited to [a] three year lookback period." Doc. 32, PageID 1818. Instead, McCleese argues that if his complaint was filed within the three-year window, then he may recover for any damages incurred from the time the infringement began in 2010. *See Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007). The question is a complex and contested one that has divided the circuit courts and district courts within this circuit. *Navarro*, 515 F. Supp. 3d at 762 (collecting cases). But the

15

Court need not definitively answer this question because McCleese has not shown an entitlement to damages.

### iv. Vicarious Liability.

McCleese also claims that Craig Natorp, the head of Natorp's landscape-design team, is vicariously liable for copyright infringement. To bring a claim for vicarious liability, a plaintiff must first establish the elements of copyright infringement and then show that the defendant had (1) the right and ability to supervise that infringement and (2) a direct financial interest in it. *Gordon*, 345 F.3d at 925. But McCleese cannot establish that copyright infringement occurred. So he necessarily cannot show that Craig Natorp supervised that infringement or had a financial interest in it. And even if McCleese could show that Natorp's infringed his copyrighted material, Craig Natorp did not select the photographs for Natorp's website or social media. Doc. 28-2, PageID 1635, ¶ 11. Although Craig Natorp supervised the installation of the custom gardens, McCleese has not established that he played a role in supervising the alleged infringement. *Id.* Accordingly, McCleese's vicarious-infringement claim fails.

*       *       *

In sum, McCleese has not established that (1) he owned the 24 contested photographs, (2) Natorp's copied original elements of them, or (3) he is entitled to actual damages or disgorgement. Since McCleese has not established a copyright-infringement claim against Natorp's, he has also failed to show that Craig Natorp is vicariously liable for that infringement.

For these reasons, Defendants' Motion for Summary Judgment is **GRANTED**.

16

### III.  AMENDMENT

McCleese has also moved for leave to amend his First Amended Complaint. Doc. 19, PageID 223. McCleese seeks to add a new cause of action for false designation under the Lanham Act as well as new facts relating to the origin of the allegedly infringed photographs. Doc. 19-1, PageID 242.

#### A. Legal Standards

McCleese's motion for leave to amend is governed by Federal Rules of Civil Procedure 15 and 16.

Rule 15 allows a plaintiff to amend his complaint once "as a matter of course" within 21 days of service, a responsive pleading, or a motion to dismiss. Fed. R. Civ. P. 15(a)(1). McCleese already did so. *Compare* Compl., Doc. 1, *with* Am. Compl., Doc. 5. Outside that 21-day period, a party requires either the opposing party's written consent—which Natorp's did not give, *see* Doc. 22—or the Court's permission to amend. Fed. R. Civ. P. 15(a)(2).

Rule 15 instructs courts to "freely give leave [to amend] when justice so requires." *Id.* Though this language appears to dictate a "liberal policy of permitting amendments," *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir. 1987), it "does not give plaintiffs unbridled authority to amend the complaint," *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 443 (6th Cir. 2014). Courts may deny a motion for leave to amend when that motion is (1) the product of "undue delay, bad faith, or dilatory motive"; (2) amendment would cause "undue prejudice to the opposing party"; (3) the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or (4) amendment of the complaint would be futile. *Riverview Health Inst. LLC v. Med. Mut. of Ohio,* 601 F.3d 505, 520 (6th Cir. 2010) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

Under Rule 16, district courts must issue a scheduling order to "limit the time to . . . amend the pleadings." Fed. R. Civ. P. 16(b)(3)(A). That schedule may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Since McCleese's motion to amend comes after the deadline in the scheduling order, Doc. 17, PageID 205, the Court would have to alter the scheduling order to allow the amendment. As a result, the Court must consider whether McCleese has established "good cause" under Rule 16. *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). In doing so, the Court must assess "the moving party's diligence in attempting to meet the [case schedule]" as well as "possible prejudice to the party opposing the modification." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quotation omitted).

When they apply together, Rule 15 and Rule 16 require courts to perform overlapping examinations of the plaintiff's timeliness in moving to amend and similar inquiries into prejudice to the defendants. *See Leary*, 349 F.3d at 909.

### B. Analysis

Under Rule 15 and Rule 16, McCleese's motion to amend was unduly delayed, risks prejudicing Defendants, and would be futile.

#### i.      Delay & Diligence.

Before the case was reassigned to the undersigned on December 21, 2022, Judge McFarland's scheduling order set the deadline to amend the pleadings as November 15, 2021, and scheduled the close of fact discovery for April 1, 2022. Doc. 17, PageID 205. Plaintiffs moved to amend on May 12, 2022—six months after the deadline to amend and over a month after the close of fact discovery. Doc. 19, PageID 223. This untimeliness constitutes undue delay under Rule 15 and reflects a lack of diligence under Rule 16. *See Priddy v. Edelman*, 883

F.2d 438, 446 (6th Cir. 1989) (affirming denial of motion to amend filed six weeks after motions deadline); *Leary*, 349 F.3d at 907 (affirming denial of leave to amend based on a lack of diligence in moving after discovery closed).

Instead of providing a reason for the lateness, McCleese insists that the motion was timely. McCleese relies on a typographical error in the parties' Rule 26(f) report, which mistakenly asserts that the deadline to amend was November 15, 2022. Doc. 16, PageID 203. But the Court's order—which binds the parties—correctly states that the deadline for the motion to amend is November 15, 2021. Doc. 17, PageID 205. McCleese's misunderstanding is not a valid excuse, especially when the 2022 date makes little sense in the context of the Court's discovery schedule. *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970 (6th Cir. 1973) (affirming the denial of leave to amend when the plaintiff's only excuse was a misunderstanding of the law).

### ii.    Prejudice.

Permitting McCleese to amend at this late stage would risk unduly prejudicing Defendants. Allowing amendment after fact discovery may "create significant prejudice to the defendants in having to reopen discovery and prepare a defense." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999). As a result, a plaintiff "is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original complaint before introducing entirely different legal theories in an amended complaint." *Priddy*, 883 F.2d at 446 (collecting cases). "This is particularly true when the motion to amend is untimely under the terms of the pretrial order, and where no . . . explanation [was] offered." *Id*. (citations omitted); *see also Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010). Here, McCleese moved to

amend to assert a new legal theory based on facts in his initial complaint after fact discovery closed. In these circumstances, it would be "manifestly unfair and unduly prejudicial" to put Natorp's through the time and expense of investigating and then litigating McCleese's new claim. *Troxel Mfg.*, 489 F.2d at 971.

### iii. Futility.

Even if McCleese met the requirements for good cause under Rule 16, the Court would still deny leave to amend because his amendments would be futile. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). That, in turn, means the amendment must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). An amendment offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not meet this standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

McCleese's proposed amendment would add a new cause of action for "[f]alse [d]esignation of [o]rigin under Section 43(a)(1)(A)." Doc. 19-1, PageID 242. McCleese explains that this claim would be "directed at Natorp's deliberate actions in falsely designating itself as the source of Plaintiff's landscape design services and promoting, marketing, and selling Plaintiff's services in association with its name and trademarks." *Id.* at 224. To support this claim, McCleese adds several paragraphs asserting that Natorp's "knowingly, willfully, and intentionally" designated McCleese's services as its own in a way that benefitted Natorp's, harmed McCleese, and confused customers. *Id.* at 243.

20

This claim is functionally identical to McCleese's claim for false advertising, which the Court has already dismissed for failing to state a claim. Doc. 12, PageID 174; *see* Fed. R. Civ. P. 12(b)(6). The false-advertising and false-designation-of-origin claims rely on the same theory and facts: Natorp's publicly claimed credit for landscapes that McCleese designed. The advertising claim focuses on public act of falsely claiming credit; the designation claim focuses on the false statement about the identity of the garden's creator. But the allegedly "false" component of Natorp's advertising is the origin of the product. As a result, the claims are flip sides of the same coin.

Because the claims are overlapping, the reasoning that justified dismissing McCleese's false-advertising claim reveals the futility of adding a false-designation claim. 15 U.S.C. § 1125(a)(1) provides the statutory basis for both McCleese's false advertising and false designation claims. This statute authorizes suit only by a "person who believes that he or she is likely to be damaged" by the defendant. 15 U.S.C. § 1125(a)(1). To satisfy this requirement, a plaintiff must show that (1) he falls within the "zone of interest" protected by the Act and (2) his injury was proximately caused by the alleged violation of the statute. *Lexmark Int'l, Inc. v. Static Control Cos.*, 572 U.S. 118, 129 (2014).

The Court dismissed McCleese's false advertising claim because McCleese failed to show statutory standing under the Lanham Act. As the Court already concluded, McCleese failed to allege "any injury to McCleese's business reputation in the marketplace or that McCleese lost any business or investors at all." Doc. 12, PageID 168–70. Instead, McCleese's allegations about goodwill and intellectual property spoke to a "mere psychological, emotional harm." *Id.* at 168.

21

McCleese's proposed claim does not allege new facts that would rectify this defect. His proposed amendment does not identify any customers, investors, or suppliers who altered their business habits in response to the alleged infringement. Even after discovery, McCleese has failed to identify an injury to his business, reputation, or goodwill for his copyright claims. His proposed amendment leaves the Court with little more than the same "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that the Court has already dismissed. *Iqbal*, 556 U.S. at 678.

In sum, McCleese does not meet the requirements to modify a scheduling order under Rule 16 or the criteria to grant leave to amend under Rule 15. For these reasons, McCleese's Motion for Leave to File an Amended Complaint is **DENIED**.

## IV.     CONCLUSION

For the reasons stated, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 28) and **DISMISSES** Plaintiff's Amended Complaint (Doc. 5) **WITH PREJUDICE**. The Court also **DENIES** Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 19). Plaintiff's Unopposed Motion to Set Status Conference (Doc. 39) is therefore **DENIED AS MOOT**. The Court **ORDERS** the clerk to **ENTER JUDGMENT** and **TERMINATE** this matter from the docket.

**IT IS SO ORDERED.**

March 31, 2026

Jeffery P. Hopkins
United States District Judge